```
CLERK'S OFFICE U.S. DIST. COURT
        AT ROANOKE, VA
              FILED

         JAN 29 2008

JOHN F. CORCORAN, CLERK
BY:
         DEPUTY CLERK
```

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| VA TIMBERLINE, LLC, | |
| Plaintiff, | Case No. 7:06cv40026 |
| v. | |
| APPALACHIAN POWER COMPANY, and FRANKLIN REAL ESTATE COMPANY, | MEMORANDUM OPINION |
| Defendants. | By: James C. Turk<br>Senior United States District Judge |

Plaintiff, VA Timberline, LLC ("Timberline"), brought this action against the defendants, Appalachian Power Company ("APCO") and Franklin Real Estate Company ("Franklin"), seeking a declaration of the parties' rights under the deeds in the parties' chains of title and under APCO's federal license. The case is now before the court on cross-motions for summary judgment. The court heard oral argument on January 3, 2008. After considering the merits of the parties' pleadings and arguments, the court grants the defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment.

## I.

The facts of this case are not in dispute. Leesville Lake is part of a hydroelectric project known as the Smith Mountain Pumped Storage Project ("Project"). Defendant, APCO operates this project under a license issued from the Federal Energy Regulatory Commission ("FERC"). On July 3, 2003, Timberline, a real estate development company, acquired approximately 287 acres of real estate on the shores of Leesville Lake. Timberline developed the property into a

1

subdivision known as Mountain View Shores, sold most of the lots within the subdivision, and retained ownership of a 3.414 acre waterfront parcel known as "Common Area D." Timberline sought to construct two docks, each with twelve boat slips, along the shoreline of Common Area D. As the land where it seeks to build is within the Project boundary, APCO asserted that pursuant to its federal license, it has the power to regulate, limit, and deny Timberline's right to construct the docks. In response, Timberline filed a complaint in the Circuit Court of Pittsylvania County asking the court to determine Timberline's and APCO's rights under the deeds in the parties' chains of title and under APCO's federal license. Timberline also requested the court to declare that APCO has neither the right nor the authority to regulate or limit Timberline's construction of any boat docking and mooring structures on the waters of Leesville Lake. APCO removed the case to federal court on May 9, 2006.

Any regulatory power possessed by APCO arises from its federal license. By order dated April 25, 1960, FERC's predecessor, the Federal Power Commission, issued APCO a license authorizing APCO to construct and operate the Smith Mountain Pumped Storage Project. Upon granting the license, FERC required APCO to "acquire title in fee or the right to use in perpetuity all lands, other than lands of the United States, necessary or appropriate for the construction, maintenance, and operation of the project." (Def.'s Ex. 6, Dkt. No. 46.) Accordingly, APCO obtained property rights to all Project lands, and either owns them in fee or has obtained rights of occupancy and use via flowage rights and easement deeds.

APCO acquired property rights to the area in question by contract. Specifically, on February 1, 1962, APCO acquired, pursuant to a Flowage Right and Easement Deed, an easement to flood the property of then landowner, Burruss Land & Lumber Company, Inc.

("Burruss") up to the 620 foot contour elevation. The Deed also granted APCO the right to

> enter upon said premises at any time and from time to time and, at Appalachian's discretion, to cut, burn and/or remove there from any and all buildings, structures, improvements, trees, bushes, driftwood and other objects and debris of any and every kind or description which are or may hereafter be located on the portion of said premises below the contour the elevation of which is 620 feet.

(Def.'s Ex. 2, Dkt. No. 46 ("1962 Deed").) Burruss retained the right to "possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to Appalachian." (1962 Deed.)

On the same day it granted the Flowage Right and Easement Deed to APCO, Burruss conveyed its property both below and above the 620 foot contour elevation in fee simple to defendant Franklin, a wholly-owned subsidiary of APCO's parent company, American Electric Power Company, Inc. On December 23, 1987, Franklin conveyed to Patten Corporation South-Atlantic ("Patten") the property located above the 620 foot contour elevation in fee simple, and an easement appurtenant to construct, maintain, and use boat docking and mooring structures and facilities on Franklin's property located below the 620 foot contour elevation. (Def.'s Ex. 3, Dkt. No. 46 ("1987 Deed").) APCO joined in the deed from Franklin to Patten

> for the purpose of releasing and quit-claiming unto [Patten] the rights in its discretion to cut, burn, and/or remove any and all boat docking and mooring structures which may now or hereafter be located on the lands below the contour, the elevation of which is 620 feet, as were granted to Appalachian by [the Flowage Right and Easement Deed from Burruss].

(1987 Deed.) Both the easement and APCO's consent were made subject to all of the terms and conditions of the license issued to APCO by the Federal Power Commission "and any amendments thereof or supplements thereto, authorizing the construction, operation and maintenance of [the Project]." (1987 Deed.)

3

On January 16, 2003, Patten conveyed a tract of approximately 20 acres located above the 620 foot contour elevation to Bobby R. Payne, Jr. On July 3, 2003, the tract of land was conveyed to Timberline.

Meanwhile, APCO's federal license was amended and supplemented. In 1998, FERC incorporated its standard land use article, Article 41, into APCO's license. Under this article, FERC delegated to APCO the authority to grant permission for certain uses which protect and enhance the scenic, recreational, and other environmental values of the project. Specifically, Article 41(b) provided that APCO may grant permission without prior FERC approval for "noncommercial piers, landings, boat docks, or similar structures and facilities that can accommodate no more than 10 watercraft at a time where said facility is intended to serve a single-family dwelling." 82 FERC ¶ 62109, at * 64168 (FERC 1998). Article 41(b) also provided that APCO could establish a program for issuing permits for the specified types of use and occupancy of project lands and waters. In April, 2000, APCO implemented such a program, whereby persons could apply to APCO for a permit to construct a boat dock on project lands and waters.

On July 5, 2005, FERC issued an Order amending Article 41(b) of APCO's license to incorporate a Shoreline Management Plan ("SMP"). 112 FERC ¶ 61026 (FERC 2005). The SMP, created by APCO and approved by FERC, established regulations for the location, length, height, and maximum size of docks along the shoreline of the Project. As amended by the SMP, Article 41(b) allows APCO to grant permission without prior Commission approval for "piers, landings, boat docks, or similar structures and facilities as determined under the Commission approved Shoreline Management Plan." Id., at * 61190. APCO's authority to grant permission

4

for any non-project uses of project land under Article 41 is within APCO's discretion. Appalachian Power Company, 113 FERC ¶ 61168, at * 61660 (FERC 2005).

As discussed above, Timberline desires to exercise its easement rights to construct two boat docks, each with twelve boat slips, along the shoreline of Common Area D. On March 8, 2005, Timberline applied to APCO for permission to construct these docks. APCO denied Timberline's application, and through November, 2005, the parties discussed permissible dock construction under APCO's license and the SMP. Timberline maintains, however, that under the proper construction and interpretation of its deed, as well as the deeds of APCO and Franklin, APCO quitclaimed its right to regulate Timberline's construction of boat docks in the 1987 deed and accordingly, has neither the right nor the authority to regulate or limit Timberline's construction of any boat docking or mooring structures along the shoreline of Common Area D.

## II.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The standard of review does not change when ruling on cross-motions for summary judgment. The motions are evaluated separately against the Rule 56 standard. Monumental Paving & Excavating, Inc. v. Pa. Mfrs. Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir.1999).

## III.

Timberline asserts that neither APCO's Flowage Easement, nor its federal license provide APCO with any authority to interfere with Timberline's easement rights, and that pursuant to its easement, Timberline has a vested property right to construct its desired boat docks. Timberline argues that although APCO obtained the right to regulate the construction of docks along the

shoreline of Common Area D in the 1960 Flowage Easement, it released and quitclaimed that right in the 1987 deed between Patten and Franklin. APCO does not contest that it released and quitclaimed its rights "to cut, burn, and/or remove any and all boat docking and mooring structures" from along the shoreline of Common Area D in the 1987 deed. Rather, APCO contends that its federal license limits what size of docks may be built in the Project and that the 1987 deed subordinated Timberline's rights to construct boat docks along the shoreline of Common Area D to APCO's responsibilities under its federal license. Thus, the task before the court is to determine what, if any, regulatory powers APCO obtained through its federal license.

The Federal Power Act ("Act") authorizes FERC to issue licenses to private parties or to state and local governments for the construction, operation, and maintenance of dams and other structures in order to develop and improve navigation and to develop, transmit, and utilize power. 16 U.S.C. § 797(e). Section 10(a) of the Act makes it a condition of each license that the project "shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway" for commerce, water power, fish and wildlife, and "other beneficial public uses . . . ." 16 U.S.C. §803(a)(1). Thus, FERC retains "the obligation to insure that any uses of the [Project] will be consistent with the beneficial public purposes for which a license has been issued." Union Electric Company, 90 FERC ¶ 61249, at * 61833 (FERC 2000). Consistent with this obligation, FERC may authorize a licensee to permit project property use for non-project purposes by granting applications to amend the license. See Id.; 80 FERC ¶ 61266, at * 61,962-63 (FERC 1997).

Through Article 41, FERC authorized APCO to grant permission for certain uses within the Project without prior FERC approval. The area in which Timberline seeks to build its docks

6

is within the Project boundaries and thus, is within the regulatory power of FERC. APCO obtained property rights to this area though the 1960 Flowage Easement. Accordingly, APCO's authority to permit certain uses extends to the area in which Timberline seeks to build. Under the SMP, Timberline may allow a total of 2 boat slips along the shoreline of Common Area D for every 100 linear feet of shoreline, as measured at the 600 foot elevation contour. 112 FERC ¶ 61026, at * 61196 (FERC 2005).

APCO has the authority under Article 41 to permit certain uses along the shoreline of Common Area D even though APCO, in the 1987 deed, quitclaimed and released its rights "to cut, burn, and/or remove any and all boat docking and mooring structures" from that location. Under Virginia law, it is the duty of the court, when construing a deed, "to ascertain the intention of the parties, gathered from the language used, and the general purpose and scope of the instrument in the light of surrounding circumstances." Davis v. Henning, 462 S.E.2d 106 (Va. 1995) (quoting Hale v. Davis, 170 Va. 68, 71, 195 S.E. 523, 524 (Va. 1938) (internal quotations omitted)). "When an easement is granted by deed, unless it is ambiguous, 'the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source.'" Pyramid Development v. D&J Associates, 553 S.E.2d 725 (Va. 2001) (quoting Gordon v. Hoy, 178 S.E.2d 495, 496 (Va. 1971)).

In the instant case, the language of the 1987 deed is unambiguous and it is clear that the 1987 deed served two purposes. First, it granted Timberline's predecessor in title an easement to construct, maintain, and use boat docking and mooring structures along the shoreline of Common Area D. Second, it released APCO's rights to cut, burn, and remove boat docking and mooring structures from that area. Neither Timberline's easement rights nor APCO's release of rights

7

were absolute, however. The 1987 deed unambiguously states that both the easement and APCO's quitclaim were made subject to all of the terms and conditions of APCO's federal license and any amendments thereof or supplements thereto, authorizing the construction, operation and maintenance of the Project. Thus, pursuant to the 1987 deed, Timberline acquired an easement to construct only those boat docks and mooring structures along the shoreline of Common Area D that are consistent with APCO's federal license.

The court concludes that although Timberline has the right, pursuant to the 1987 deed, to construct boat docking and mooring structures along the shoreline of Common Area D, it may construct only those structures which are consistent with the terms and conditions of APCO's federal license, as amended to incorporate the Shoreline Management Plan. For this reason, the court grants APCO's motion for summary judgment and denies Timberline's motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and accompanying Order to all counsel of record and to strike the case from the active docket of the court.

ENTER: This 29th day of January, 2008

/s/ James C. Turk
Hon. James C. Turk
Senior United States District Judge